UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JILLAINE MERTENS,

Defendant.

**INFORMATION**  CR 26-96 MJD

18 U.S.C. § 1343
18 U.S.C. § 982
28 U.S.C. § 2461

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At times relevant to this Information:

1.     The Great Start Compensation Support Payment Program ("GSCSPP") was a State of Minnesota-funded program that provided child care centers located in Minnesota with a permanent program designed to support the child care industry and child care educators with supplemental pay based upon the number of full-time equivalent staff who regularly care for children in the program.

2.     The GSCSPP was administered by the Minnesota Department of Children, Youth, and Families ("DCYF").

3.     To be eligible for GSCSPP funds, child care providers were required to be:

   a.     Licensed or certified by the State of Minnesota or licensed by a Tribal Nation;

   b.     Be in good standing with the State of Minnesota or a Tribal Nation for at least five calendar days during the funding period;

   c.     Be open, operating, and serving children for at least five calendar days during the funding period; and

1

SCANNED
MAY 2 0 2026
U.S. DISTRICT COURT MPLS

  d.  Serve a minimum number of children on at least five calendar days during the funding period.

4.  To receive reimbursement through the GSCSPP, eligible licensed child care providers were required to submit applications on a monthly basis. These applications were submitted via the Minnesota Department of Human Services Provider Hub website.

5.  The Provider Hub is built on a government cloud platform, with servers located in the State of Ohio.

6.  DCYF processed GSCSPP reimbursements based on a formula. The formula included a full-time equivalent staff ("FTE") number. Generally, 1.0 FTE accounted for a staff member who worked 32 hours per week. Through the GSCSPP, DCYF paid $375 per FTE.

7.  Child care providers that submitted applications for reimbursement to GSCSPP were required to maintain documentation in support of the applications they submitted, documenting staff employment, compensation, and benefits, which was required to include time sheets or other records of daily hours worked. Before submitting their GSCSPP application, providers were required to attest and certify that they had verified the information provided in their application to be true and accurate. The provider then signed the application via a digital signature.

**A.  The Defendant and Her Role**

8.  The defendant, JILLAINE MERTENS, lived in Minnesota and operated at least three child care centers within the State of Minnesota: (i) Creative Stars Academy , LLC, operating in Rochester, Minnesota ("Creative Stars I"), (ii) Creative Stars Academy, LLC, operating in Kasson, Minnesota ("Creative Stars II"), and (iii) Tree of Life Academy, LLC, operating in Ramsey, Minnesota ("Tree of Life") (collectively, the "Mertens Child Care Providers").

9.  On or about October 25, 2018, JILLAINE MERTENS registered Creative Stars

Academy, LLC, as a business with the State of Minnesota Secretary of State. On or about March 13, 2023, JILLAINE MERTENS enrolled Creative Stars I and Creative Stars II as Licensed Child Care Centers in the State of Minnesota.

10.     On or about November 4, 2024, JILLAINE MERTENS registered Tree of Life as a business with the State of Minnesota Secretary of State. On or about January 8, 2025, JILLAINE MERTENS enrolled Tree of Life as a Licensed Child Care Center in the State of Minnesota.

**B.     The Scheme to Defraud the GSCSPP**

11.     From in or around at least November 2024 through in or around May 2025, in the State and District of Minnesota and elsewhere, the defendant, JILLAINE MERTENS, did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

12.     It was the purpose of the scheme for JILLAINE MERTENS to unlawfully enrich herself by, among other things: (a) making false and fraudulent representations in the submission of applications to DCYF for GSCSPP funds that inflated the number of hours worked by teachers and staff, (b) making false and fraudulent representations in the submission of applications to DCYF for GSCSPP funds for teachers and staff that were not working at the Mertens Child Care Providers at all, (c) concealing the false and fraudulent representations to DCYF, and (d) diverting proceeds of the fraud for the personal use and benefit of JILLAINE MERTENS and to further the fraud scheme.

13.     The manner and means by which JILLAINE MERTENS executed the scheme included, among other things, the following:

        a.     JILLAINE MERTENS began submitting monthly applications to DCYF on

3

behalf of Creative Stars I and Creative Stars II on or about October 21, 2023, seeking reimbursement from GSCSPP.

b.      Between in or around October 2023 and at least in or around May 2025, JILLAINE MERTENS signed applications on behalf of Creative Stars I and Creative Stars II, setting forth each employee for whom she was seeking reimbursement and the number of hours they worked, and attesting:

> I understand that if I knowingly submit false or fraudulent information during the funding application process or thereafter, including in this attestation, my program will no longer be eligible for future funds and maybe subject to criminal and civil penalties.

c.      JILLAINE MERTENS began submitting monthly applications to DCYF on behalf of Tree of Life on or about February 18, 2025, seeking reimbursement from GSCSPP.

d.      Between in or around February 2025 and at least in or around May 2025, JILLAINE MERTENS signed applications on behalf of Tree of Life, setting forth each employee for whom she was seeking reimbursement and the number of hours they worked, and attesting:

> I understand that if I knowingly submit false or fraudulent information during the funding application process or thereafter, including in this attestation, my program will no longer be eligible for future funds and maybe subject to criminal and civil penalties.

e.      Between in or around November 2024 and in or around May 2025, JILLAINE MERTENS submitted applications to DCYF for GSCSPP funds on behalf of at least 23 employees who were not actually employed by a Mertens Child Care Provider during the period for which JILLAINE MERTENS was seeking reimbursement.

f.      For example, on or about March 22, 2025, JILLAINE MERTENS

4

submitted an application, by and through Tree of Life, to DCYF for the period of February 1, 2025, through February 28, 2025, in which she sought reimbursement from GSCSPP in the amount of approximately $618.75 for 200 hours of care provided by Individual 1, at an FTE value of 1.65, when, in fact, Individual 1 was not actually employed by Tree of Life or any Mertens Child Care Provider.

g.      Between in or around November 2024 and in or around May 2025, JILLAINE MERTENS submitted applications to DCYF for GSCSPP funds on behalf of at least 11 employees for more hours than they actually worked, including by making representations that JILLAINE MERTENS herself was providing in-classroom services at two different child care providers at the same time.

h.      From in or around November 2024 through in or around May 2025, JILLAINE MERTENS made false and fraudulent representations to DCYF, by and through the Mertens Child Care Providers, to obtain GSCSPP funds to which she was not entitled for which she was paid approximately $425,000.

## Count 1
### (Wire Fraud)

14.   Paragraphs 1 through 13 are incorporated herein.

15.   On or about March 22, 2025, in the State and district of Minnesota and elsewhere, the defendant, JILLAINE MERTENS, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of wire communication in interstate commerce a writing, sign, signal, picture, or sound, for the purpose of obtaining by money or property, false and fraudulent representations, as described below:

5

| Count | Provider | Employee | Approx. Date of Claim | Approx. Hours Billed | Approx. Reimbursement |
|-------|----------|----------|------------------------|----------------------|------------------------|
| 1 | Tree of Life | Individual 1 | March 22, 2025 | 200 | $618.75 |

(In violation of Title 18, United States Code, Section 1343)

## FORFEITUREALLEGATIONS
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461)

16.     The allegations contained in Count 1 of this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture against defendant JILLAINE MERTENS, pursuant to the provisions of Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461.

17.     Pursuant to Title 18, United States Code, Section 981(a)(1)(C), upon being convicted of the crimes charged in Count 1 of this Indictment, the convicted defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, from  proceeds traceable to the commission of the offense.

18.     If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 28, United States Code, Section 2461(c).

Dated: May 20, 2026

DANIEL N. ROSEN
United States Attorney

/s/ Matthew Murphy
MATTHEW C. MURPHY
Assistant U.S. Attorney
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Office: (612) 253-0984
MN Atty ID: 0391948

6

Matthew.murphy2@usdoj.gov

LORINDA LARYEA
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

/s/ Shankar Ramamurthy
SHANKAR RAMAMURTHY
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice