UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.26-96 (MJD)

UNITED STATES OF AMERICA,

          Plaintiff,

v.

JILLAINE MERTENS,

          Defendant.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

The United States of America and Jillaine Mertens (hereafter, the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota and the United States Department of Justice, Criminal Division, Fraud Section (hereafter, "the United States" or "the government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges**. The defendant agrees to plead guilty to Count One of the Information, which charges the defendant with wire fraud, in violation of 18 U.S.C. § 1343. The defendant fully understands the nature and elements of the crimes with which she has been charged.

2. In consideration for the defendant's plea of guilty, the government agrees it will not pursue additional charges against the defendant for any matters presently under investigation by the United States.

3. **Factual Basis**. The defendant is pleading guilty because she is in fact guilty of Count One of the Information. In pleading guilty, the defendant admits the

1

following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

The defendant acknowledges that she knowingly devised and participated in a scheme to defraud the State of Minnesota Great Start Compensation Support Payment Program ("GSCSPP") and to obtain money by means of materially false and fraudulent representations transmitted by means of wire communication in interstate commerce.

Between in or around November 2024 and May 2025, within the District of Minnesota and elsewhere, the defendant knowingly carried out a scheme to defraud the GSCSPP, a state-funded program that provided child care centers located in Minnesota with a permanent program designed to support the child care industry and child care educators with supplemental pay based upon the number of full-time equivalent staff who regularly care for children in the program. As a result, the defendant obtained over $425,000 in program funds that were intended as reimbursements for in-classroom services that were not actually provided to children.

Specifically, the defendant lived in Minnesota and operated at least three child centers within the State of Minnesota: (i) Creative Stars Academy , LLC, operating in Rochester, Minnesota ("Creative Stars I"), (ii) Creative Stars Academy, LLC, operating in Kasson, Minnesota ("Creative Stars II"), and (iii) Tree of Life Academy, LLC, operating in Ramsey, Minnesota ("Tree of Life") (collectively, the "Mertens Child Care Providers"). Defendant enrolled each with the Minnesota Department of

Children, Youth, and Families ("DCYF") and submitted applications for reimbursement from GSCSPP.

Between November 2024 and May 2025, the defendant submitted monthly applications on behalf of each of the three child care companies to DCYF seeking GSCSPP funds. In each application, the defendant certified:

> I understand that if I knowingly submit false or fraudulent information during the funding application process or thereafter, including in this attestation, my program will no longer be eligible for future funds and maybe subject to criminal and civil penalties.

During that same time period, the defendant submitted applications to DCYF for GSCSPP funds on behalf of at least 23 employees who were not actually employed by the child care companies during the period for which the defendant was seeking reimbursement. She submitted applications to DCYF for GSCSPP funds on behalf of an additional 11 employees for more hours than they actually worked. Each of these applications was submitted through the Provider Hub, an online portal built on a government cloud platform, with servers located in the State of Ohio.

In particular, and as charged in Count 1 of the information, on March 22, 2025, the defendant submitted an application, by and through Tree of Life, to DCYF for the period of February 1, 2025, through February 28, 2025, in which she sought reimbursement from GSCSPP in the amount of approximately $618 for 200 hours of care provided by Individual 1, at an FTE value of 1.65, when, in fact, Individual 1 was not actually employed by Tree of Life. The application was submitted through the Provider Hub.

In all, the defendant, through Creative Stars I, Creative Stars II, and Tree of Life, submitted applications to and received funds from the GSCSPP for approximately $426,382 based on false and fraudulent interstate wire communications.

4.      **Waiver of Indictment**. The defendant waives the right to be charged by Indictment. The defendant agrees to sign a written waiver of this right at the change of plea hearing.

5.      **Waiver of Pretrial Motions**. The defendant understands and agrees that she has certain rights to file pretrial motions in this case. As part of this plea agreement and based upon concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pretrial motions in this case.

6.      **Waiver of Constitutional Trial Rights.** The defendant understands that she has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that she has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent her. The defendant understands that she has the right to persist in a plea of not guilty and, if she does so, she would have the right to a public

and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

7.    **Additional Consequences**. The defendant understands that as a result of her conviction, she could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

8.    **Statutory Penalties**. The defendant understands that Count One of the Information (wire fraud, in violation of 18 U.S.C. § 1343) is a felony offense that carries the following statutory penalties:

    a.    a maximum of 20 years in prison;

    b.    a supervised release term of not more than 3 years;

    c.    a maximum fine of $250,000, or twice the gross gain or loss caused by the offense, whichever is greatest;

    d.    restitution as determined by the Court; and

    e.    a mandatory special assessment of $100.

9.    **Revocation of Supervised Release.** The defendant understands that if she were to violate any supervised release condition while on supervised release, the Court could revoke her supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that she be

placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

10. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

a. Base Offense Level. The parties agree that the base offense level is 7. U.S.S.G. § 2B1.1(a)(1).

b. Specific Offense Characteristics. The parties agree that a 12-level enhancement applies pursuant to Guidelines § 2B1.1(b)(1)(G) because the intended loss exceeded $250,000 but was less than $550,000. The parties agree that no other specific offense adjustments apply.

c. Chapter 3 Adjustments. The parties agree that a 2-level enhancement applies pursuant to Guidelines § 3B1.3 because the defendant abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense. The parties agree that, other than acceptance of responsibility, no other Chapter 3 adjustments apply.

d. Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of her intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation

6

Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw her guilty plea after it is entered.

e. <u>Zero-Point Offender Adjustment</u>. Because the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a 2-level reduction under U.S.S.G. § 4C1.1.

f. <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within her criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on her true criminal history category, and she will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

g. <u>Guidelines Range</u>. If the adjusted offense level is 16, and the criminal history category is I, the Sentencing Guidelines range is 21-27 months of imprisonment.

h. <u>Fine Range</u>. If the adjusted offense level is 16, the Sentencing Guidelines fine range is $10,000 to $95,000. U.S.S.G. § 5E1.2(c)(3).

11. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the

7

Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

12.     **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make motions for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), and to oppose any such motion made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw her guilty plea.

13.     **Special Assessment**. The Sentencing Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. The defendant agrees that the special assessment is due and payable at the time of sentencing.

14.     **Restitution Agreement**. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of her crime. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named

in the Information. The defendant agrees that she owes restitution in the amount of $426,382.

15. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of her guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate her ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

16. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to the wire fraud scheme charged in Count 1 of the Information.

The defendant agrees that the United States may, at its option, forfeit the property through civil, criminal or administrative proceedings, waives any deadline

9

or statute of limitations for the initiation of any such proceedings, and abandons any interest she may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge (including direct appeal, habeas corpus, or any other means) such forfeiture, directly or through any company she owns or controls, on any grounds. To the extent the defendant has requested remission or mediation of the forfeiture of the property, she withdraws any such requests. The defendant agrees not to assist any third party in challenging the forfeiture of the property.

The defendant consents to the entry of a money judgment forfeiture in the amount of $426,382, which represents the amount of proceeds the defendant obtained from the wire fraud scheme alleged in Count 1 of the Information. The defendant will receive a credit against the money judgment forfeiture for the net value of all property that is forfeited from her in this matter. The United States reserves the right to seek forfeiture of substitute assets and any additional directly forfeitable property.

17. **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The defendant also waives the right to collaterally attack her conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance

of counsel. Further, this collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with her attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

18.    **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

19.    **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with her decision to plead guilty, except those set forth in this plea agreement; (d) that

11

the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

Dated:

DANIEL N. ROSEN
United States Attorney

BY:   MATTHEW C. MURPHY
Assistant United States Attorney

LORINDA LARYEA
Chief, Fraud Section

BY:   SHANKAR RAMAMURTHY
Assistant Chief
Health Care Fraud Unit

Dated:   7/9/2026

JILLAINE MERTENS
Defendant

Dated:   7/9/2026

JOSEPH TAMBURINO
Counsel for Ms. Mertens

12